IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KIAIRE MIDDLETON, | : | |
| | : | |
| Plaintiff | : | CIVIL NO. 1:16-CV-00203 |
| | : | |
| vs. | : | |
| | : | |
| C.O. SANCHEZ, et al., | : | (Judge Rambo) |
| | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM

## Background

On February 4, 2016, Plaintiff Kiaire Middleton, an inmate currently incarcerated at the State Correctional Institution at Camp Hill, Pennsylvania ("SCI-Camp Hill"), filed a complaint pursuant to 42 U.S.C. § 1983 against three correctional officers employed at SCI-Camp Hill. Doc. 1.  Along with the complaint Plaintiff filed a motion to proceed in forma pauperis. Doc. 2.  On February 8, 2016, an Administrative Order was issued directing Plaintiff to pay the filing fee or file an authorization form to have funds deducted from his prison trust fund account within 30 days. Doc. 6.  On February 16, 2016, Plaintiff filed

a second motion to proceed in forma pauperis and the authorization form. Docs. 7 and 8.  Subsequently, Plaintiff filed two additional motions to proceed in forma pauperis. Docs. 9 and 12.

The Prison Litigation Reform Act (the "PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996) imposed new obligations on prisoners who file suit in federal court and wish to proceed in forma pauperis under 28 U.S.C. § 1915, e.g., the full filing fee ultimately must be paid (at least in a non-habeas suit). Also, a new section was added which relates to screening complaints in prisoner actions.[1]  For the reasons outlined below, Plaintiff's motions for leave to proceed in forma pauperis will be construed as motions to proceed without full prepayment of the filing fee and

---

1.  Section 1915(e)(2) provides:

   (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that (A) the allegation of poverty is untrue; or (B) the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

granted, and Plaintiff's complaint will be dismissed with leave to submit an amended complaint.

## Discussion

Plaintiff's claims are set forth on a form § 1983 complaint, which are routinely provided to pro se litigants, and four additional pages. Doc. 1.  Named as defendants are Correctional Officers Sanchez, Johnson and Spikler. Id. at 2.  Plaintiff alleges that on October 12, 2015, he was performing his "usual duties," apparently his prison job, in the visiting room and at about 12:00 Noon, requested permission to return to his cell block which he refers to as M-Block because he was not feeling well. Id. at 5.  Plaintiff alleges that before leaving the visiting room he was strip searched and that after entering the "block" he was detained, handcuffed and patted down by Correctional Officers Gruber and Ballette. Id.  Plaintiff claims that Defendants Sanchez and Johnson "showed up" and patted him down which search disclosed no contraband. Id. Plaintiff claims that Defendant Sanchez then stated "I know where you guys hide your shit" and engaged in a

more intrusive search of Plaintiff's groin. Id.
Plaintiff alleges Defendant Sanchez unbuttoned
Plaintiff's pants and "look[ed] for contraband under
[his] penis." Id. at 3.  Plaintiff contends that when
Defendant Sanchez found no contraband, he "was asked
numerous questions about [his] involvement with
[another] inmate [] bringing contraband into the
visiting room" but Plaintiff "denied any knowledge of
that illegal activity and told them [he] was nearing
[his] parole minimum[.]" Id. at 5. Plaintiff then claims
that Defendant Sanchez "pushed [Plaintiff's] face with
his finger" and "told [Plaintiff] if [he] didn't tell
[he would] never see [his] minimum." Id.  Plaintiff
alleges that he "maintained [his] innocence." Id.

Plaintiff claims that he was then escorted to
the Restricted Housing Unit ("RHU") by Defendants
Sanchez and Johnson. Id. at 2.  He alleges that "[w]hile
being led to the RHU" he was "subjected to ridicule,
harassment and abuse by [Defendant Sanchez]" and that at
one point Defendant Sanchez tightened his handcuffs
which "cut into [his] wrist[s]" and caused him to yell

in pain. Id. at 5. Plaintiff claims that at that point, Defendant Sanchez stated "[n]o cameras means it never happened" and all the other correctional officers, including Defendant Johnson "started laughing." Id. Plaintiff alleges that once in the RHU he was again strip searched but the correctional officers found no contraband. Id.

Plaintiff claims that he remained in the RHU from October 12, 2015, through November 4, 2015, "for something [he] had nothing to do with." Id. at 7. During the first two days in the RHU, Plaintiff alleges that he "was denied yard, showers, and meals[2] despite requesting them properly" and he "was told that [he] would receive those things once [he] cooperated and gave [himself] up." Id. at 5.

After being released from the RHU, Plaintiff claims that on November 5, 2015, he had a visit from his mother and daughter and after entering the visiting room he "felt weird tention (sic) between [him] and the

---

2. Plaintiff does not allege he was denied all meals during the first two days in the RHU just that he was denied meals.

visiting room staff." Id. at 6.  Plaintiff claims he asked the visiting room staff why they were not speaking to him and "they said the security department told them [he] told on them about how things are run in the visiting room[.]" Id. Plaintiff alleges that while he was visiting with his mother and daughter, Defendant Spikler came into the visiting room and "kept giving [him] funny looks because of what security told him" and, when Plaintiff exited the visiting room to use the bathroom, Defendant Spikler called him a snitch and Defendant Spikler started telling other inmates and correctional officers he was a snitch. Id.  Plaintiff claims this conduct by Defendant Spikler placed his life in danger.

As relief, Plaintiff requests compensatory and punitive damages in the total amount of $80,000.00 for the poke in the face and the discomfort from the handcuffs and for being searched "off camera" in the groin by Defendant Sanchez. Id. at 3.

When considering a complaint accompanied by a motion to proceed in forma pauperis, a district court may rule that process should not be issued if the

complaint is malicious, presents an indisputably
meritless legal theory, or is predicated on clearly
baseless factual contentions.  Neitzke v. Williams, 490
U.S. 319, 327-28 (1989); Wilson v. Rackmill, 878 F.2d
772, 774 (3d Cir. 1989).  Indisputably meritless legal
theories are those "in which either it is readily
apparent that the plaintiff's complaint lacks an
arguable basis in law or that the defendants are clearly
entitled to immunity from suit . . . ."  Roman v.
Jeffes, 904 F.2d 192, 194 (3d Cir. 1990) (quoting
Sultenfuss v. Snow, 894 F.2d 1277, 1278 (11th Cir.
1990)).  The Supreme Court has recognized that "a
finding of factual frivolousness is appropriate when the
facts alleged rise to the level of the irrational or the
wholly incredible . . . ."  Denton v. Hernandez, 504
U.S. 25, 33 (1992); see also Roman, 904 F.2d at 194
(baseless factual contentions describe scenarios clearly
removed from reality).  The Third Circuit added that
"the plain meaning of 'frivolous' authorizes the
dismissal of in forma pauperis claims that . . . are of
little or no weight, value, or importance, not worthy of
serious consideration, or trivial."  Deutsch v. United

States, 67 F.3d 1080, 1083 (3d Cir. 1995).  It also has been determined that "the frivolousness determination is a discretionary one," and trial courts "are in the best position" to determine when an indigent litigant's complaint is appropriate for summary dismissal.  Denton, 504 U.S. at 33.

Even though a complaint is not frivolous it still may be dismissed under the screening provisions of the PLRA if it fails to state a claim upon which relief may be granted.  Fed.R.Civ.P. 12(b)(6) is the basis for this type of dismissal.  Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir.2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir.2008)).  While a complaint need only contain "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550

U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929
(2007), a complaint must plead "enough facts to state a
claim to relief that is plausible on its face." Id. at
570, 550 U.S. 544, 127 S.Ct. 1955 at 1974, 167 L.Ed.2d
929. "The plausibility standard is not akin to a
'probability requirement,' but it asks for more than a
sheer possibility that a defendant has acted
unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129
S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting
Twombly, 550 U.S. at 556, 127 S.Ct. at 1965.) "[L]abels
and conclusions" are not enough, Twombly, 550 U.S. at
555, 127 S.Ct. at 1964-65, and a court "'is not bound
to accept as true a legal conclusion couched as a
factual allegation.'" Id., 127 S.Ct. at 1965 (quoted
case omitted).

        In resolving the issue of whether a complaint
states a viable claim, we thus "conduct a two-part
analysis." Fowler, supra, 578 F.3d at 210. First, we
separate the factual elements from the legal elements
and disregard the legal conclusions. Id. at 210-11.
Second, we "determine whether the facts alleged in the
complaint are sufficient to show that the plaintiff has

a "'plausible claim for relief.'" Id. at 211 (quoted case omitted).

A plaintiff, in order to state a viable § 1983 claim, must plead two essential elements:  1) that the conduct complained of was committed by a person acting under color of state law, and 2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States.  Natale v. Camden County Corr. Facility, 318 F.3d 575, 580-581 (2003);  Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Construing Plaintiff's complaint liberally, it appears that Plaintiff is attempting to raise a claim under the Fourth Amendment, Eighth Amendment and the Due Process Clause of the Fourteenth Amendment.

Maintaining security and order in a penal institution is a legitimate concern and an inmate's rights under the Fourth Amendment while not totally eliminated by that concern are significantly reduced. Bell v. Wolfish, 441 U.S. 520, 558-560 (1979); Lyon v.

<u>Farrier</u>, 727 F.2d 766, 769 (8ᵗʰ Cir. 1984).  An inmate may have a claim under the Fourth Amendment if he or she is subjected to an unreasonable search. <u>Id.</u>

In <u>Florence v. Board of Chosen Freeholders of the County of Burlington</u>, ___ U.S.___, 132 S.Ct. 1510, 1515-1516, 182 L.Ed. 566, ___ (2012), the Supreme Court emphasized that "correctional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities. . . . The task of determining whether a policy is reasonably related to legitimate security interests is peculiarly within the province and professional expertise of corrections officials" and "in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations courts should ordinarily defer to their expert judgment in such matters." 132 S.Ct. at 1517 (citations and quotations marks omitted).

11

In _Millhouse v. Arbasak_, 373 F. App'x 135, 137-138 (3d Cir. 2010) the Court of Appeals for this circuit stated that

> Millhouse alleges that prison officials routinely subjected him to strip searches when entering and exiting his cell in the SHU and that, during one search, a guard "focused on his chest and penis while other employees were present." The Supreme Court has held that prison officials may conduct visual body cavity searches in a reasonable manner. . . Assuming the truth of Millhouse's allegations, the searches, even if embarrassing and humiliating, do not violate the constitution.

373 F. App'x at 137 (citations omitted). It is not unreasonable to conduct a non-abusive, strip search of inmates when transferring an inmate from one area of prison to another or when responding to an incident of the introduction of contraband into a prison. _See_ _Small v. Wetzel_, 528 F. App'x 202, 206-207 (3d Cir. 2013); _Millhouse_, 373 F. App'x at 137-138; _Lim v. Cruz_, 2015 WL 1185982, *7 (M.D.Pa. March 13, 2015).

There are no facts alleged in the complaint from which it can be concluded that Defendant Sanchez or any other correctional officer went beyond a reasonable

strip search, i.e., one which was necessary to discover contraband.[3]  Consequently, Plaintiff's Fourth Amendment claims will be dismissed.

Although prisoners are protected from cruel and unusual punishment by the Eighth Amendment, not all tortious conduct which occurs in prison rises to the level of an Eighth Amendment violation.  See Howell v. Cataldi, 464 F.2d 272, 277 (3d Cir. 1972) (Not all tortious conduct redressable under state law constitutes cruel and unusual punishment).  "Not every push or shove, even if it may later seem unnecessary in the peace of the judge's chambers, violates a prisoner's constitutional rights."  Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.), cert. denied, 414 U.S. 1033 (1973).  If a correctional officer uses physical force in pursuit of valid penological or institutional goals, then the force used will rarely, if ever, violate the

---

3.  There are no allegations that any Defendant conducted an invasive, body-cavity search.

Eighth Amendment. <u>See</u> <u>Whitley v. Albers</u>, 475 U.S. 312 (1986); <u>Rhodes v. Chapman</u>, 452 U.S. 337, 346 (1981).

In order to constitute cruel and unusual punishment, the correctional officer's use of force must involve the "unnecessary and wanton infliction of pain." <u>Whitley</u>, 475 U.S. at 319. "Wanton" has been defined as requiring that the correctional officer has intended to harm the inmate. <u>Sampley v. Ruettgers</u>, 704 F.2d 491, 495 (10th Cir. 1983). "Unnecessary" has been held to require that the force used exceed that which appeared reasonably necessary to maintain or restore discipline at the time of the use of force. <u>Id</u>. Finally, "pain" requires more than momentary discomfort; the attack must have resulted in either severe pain or a lasting injury. <u>Id</u>.

However, the United States Supreme Court in a later ruling recognized that the use of force may constitute cruel and unusual punishment even if the prisoner does not sustain serious physical injuries. <u>Hudson v. McMillan</u>, 503 U.S. 1, (1992). The Court added

14

that the core judicial inquiry is whether force was
applied in a good faith effort to maintain or restore
discipline or maliciously and sadistically to cause
harm.

A court must look to a number of factors to
determine whether the corrections officer, through his
conduct, has "crossed the constitutional line."
Johnson, 481 F.2d at 1033.  In Whitley, the Supreme
Court, relying on Johnson, listed the following factors
which a court should consider:  (1) the need for
application of force; (2) the relationship between the
need and the amount of force used; (3) the extent of
injury inflicted; (4) the extent of the threat to the
safety of staff and inmates as reasonably perceived by
responsible officials on the basis of facts known to
them; and (5) any attempts made to temper the severity
of the forceful response.  Whitley, 475 U.S. at 321.

It must also be kept in mind that a correctional
officer, to maintain control of inmates, must often make
instantaneous, on-the-spot decisions concerning the need

to apply force.  See Wolff v. McDonnell, 418 U.S. 539,
566-67 (1974).  Courts should be hesitant "to critique
in hindsight decisions necessarily made in haste, under
pressure, and frequently without the luxury of a second
chance."  Whitley, 475 U.S. at 320.

There are no allegations in the complaint that
Plaintiff suffered lasting injury as a result of (1)
being poked in the face with a finger, (2) having the
handcuffs tightened or (3) being denied meals for two
days.  The most that can be inferred, based on the
allegations, is that Plaintiff had temporary discomfort.
Furthermore, there are no allegations that Plaintiff was
assaulted by other inmates.

To the extent that Plaintiff alleges he was
verbally harassed, mere verbal harassment does not rise
to the level of a constitutional violation. Johnson v.
Glick, 481 F.2d 1028, 1033 n.7 (2d Cir. 1973); Maclean
v. Secor, 876 F. Supp. 695, 698-99 (E.D. Pa. 1995);
Murray v. Woodburn, 809 F. Supp. 383, 384 (E.D. Pa.
1993) ("Mean harassment . . . is insufficient to state a

16

constitutional deprivation."); <u>Prisoners' Legal Ass'n v. Roberson</u>, 822 F. Supp. 185, 189 (D.N.J. 1993) ("[V]erbal harassment does not give rise to a constitutional violation enforceable under § 1983.").

Finally, Plaintiff has not alleged facts from which it could be concluded that his due process rights were violated. The Fourteenth Amendment of the United States Constitution provides in pertinent part: "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."  The Supreme Court has mandated a two-part analysis of a procedural due process claim:  first, "whether the asserted individual interests are encompassed within the . . . protection of 'life, liberty or property[,]'" and second, "if protected interests are implicated, we then must decide what procedures constitute 'due process of law.' " <u>Ingraham v. Wright</u>, 430 U.S. 651, 672 (1977). If there is no protected liberty or property interest, it is obviously unnecessary to analyze what procedures

were followed when an alleged deprivation of an interest occurred.

Liberty interests protected by the Fourteenth Amendment may arise either from the Due Process Clause itself or from state law.  <u>Meachum v. Fano</u>, 427 U.S. 215, 223-26 (1976).  In <u>Wolff v. McDonnell</u>, 418 U.S. 539, 563-573 (1974), where the plaintiffs were deprived of good time credits as a severe sanction for serious misconduct, the Supreme Court held that such inmates have various procedural due process protections in a prison disciplinary proceeding, including the right to call witnesses and to appear before an impartial decision-maker.[4]

_____

4.  In <u>Wolff</u>, the Supreme Court recognized that "prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."  <u>Id</u>. at 556.  Nonetheless, the Supreme Court held that a prisoner facing serious institutional sanctions is entitled to some procedural protection before penalties can be imposed.  <u>Id</u>. at 563-71.  The Supreme Court set forth five requirements of due process in a prison disciplinary proceeding: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the

(continued...)

Thereafter, the Court in <u>Hewitt v. Helms</u>, 459 U.S. 460, 471 (1983), stated that a state law which "used language of an unmistakably mandatory character" creates a protected liberty interest.  Following <u>Hewitt</u> many courts held that a state regulation can create a due process interest -- such as freedom from punitive segregation -- if the rule contains mandatory language such as "shall" or "will."  <u>E.g.</u>, <u>Layton v. Beyer</u>, 953 F.2d 839, 848-49 (3d Cir. 1992).  Our Court of Appeals, this court, and other courts applied the <u>Wolff</u> principles to prison disciplinary hearings which did not

_____

(...continued)
charges; (3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; (4) assistance from an inmate representative, if the charged inmate is illiterate or if complex issues are involved; (5) a written decision by the fact finders as to the evidence relied upon and the rationale behind their disciplinary action. <u>Id.</u>

An additional procedural requirement was set forth in <u>Superintendent, Massachusetts Correctional Institution at Walpole v. Hill</u>, 472 U.S. 445, 453-456 (1985).  In that case, the Court held that there must be some evidence which supports the conclusion of the disciplinary tribunal.

result in withdrawal of good time credit but instead in
disciplinary or administrative segregation.  E.g.,
Grillo v. Coughlin, 31 F.3d 53 (2d Cir. 1994); Griffin
v. Spratt, 969 F.2d 16 (3d Cir. 1992); Cook v. Lehman,
863 F. Supp. 207 (E.D. Pa. 1994); Edwards v. White, 501
F. Supp. 8 (M.D. Pa. 1979), aff'd, 633 F.2d 209 (3d Cir.
1980).

The Court's decision in Sandin v. Conner, 115
S.Ct. 2293 (1995), however, marked a shift in the focus
of liberty interest analysis from one "based on the
language of a particular regulation" to "the nature of
the deprivation" experienced by the prisoner.  Id. at
2299.  In Sandin the Court was presented with the
procedural due process claims of a state prisoner who
had been found guilty of misconduct and sentenced to 30
days in disciplinary segregation.  Id. at 2296-97.  The
Court first found that the approach adopted in Hewitt –
described above -- was unwise and flawed.  Id. at 2298-
2300.  The Court also rejected plaintiff Conner's
argument that "any state action taken for punitive

20

reasons encroaches upon a liberty interest under the Due Process Clause even in the absence of any state regulation." Id. at 2300.  The Court reasoned, inter alia, that "[d]iscipline by prison officials in response to a wide range of misconduct" is expected as part of an inmate's sentence.  Id. at 2301.  The nature of plaintiff Conner's confinement in disciplinary segregation was found similar to that of inmates in administrative segregation and protective custody at his prison.  Id.

Focusing on the nature of the punishment instead of on the words of any regulation, the Court held that the procedural protections in Wolff were inapplicable because the "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest."  115 S.Ct. at 2301.  The Court examined the nature of Conner's disciplinary segregation and found that "[b]ased on a comparison between inmates inside and outside disciplinary segregation, the State's

actions in placing him there for 30 days did not work a major disruption in his environment." <u>Id.</u>  In the final holding of the opinion, the Court stated "that neither the Hawaii prison regulation in question, <u>nor the Due Process Clause itself</u>, afforded Conner a protected liberty interest that would entitle him to the procedural protections set forth in <u>Wolff</u>." <u>Id.</u> (emphasis added).[5]

---

5. The <u>Sandin</u> Court relied on three factors in making this determination: (1) confinement in disciplinary segregation mirrored conditions of administrative segregation and other forms of discretionary confinement; (2) based on a comparison between inmates inside and outside segregation, the state's action in placing the inmate there did not work a major disruption in the inmate's environment; and (3) the state's action did not inevitably affect the duration of inmate's sentence.

Furthermore, the majority in <u>Sandin</u> viewed administrative or protective custody as "not atypical" and within the "ordinary incidents of prison life." 115 S.Ct. at 2300-01.  Specifically, the Court stated that "Conner's confinement did not exceed similar, but totally discretionary confinement in either duration or degree of restriction." <u>Id.</u> at 2301.  Consequently, the appropriate point of comparison is between disciplinary segregation and other forms of discretionary segregation, not general population conditions.

In light of <u>Sandin</u>, prison disciplinary segregation will violate the protected liberty interest of the Fourteenth Amendment only if it dramatically departs, in length time or otherwise, from basic prison conditions and imposes atypical, significant hardship on the inmate.  This court and others within this circuit, applying <u>Sandin</u> in various actions, have found no merit in the procedural due process claims presented. <u>See</u> <u>Smith v. Messinger</u>, 293 F.3d 641, 653 (3d Cir. 2002)(seven months in disciplinary segregation is insufficient to trigger a due process violation); <u>Griffin v. Vaughn</u>, 112 F.3d 703, 706-708 (3d Cir. 1997)(no liberty interest avoiding fifteen (15) month placement in administrative custody because said confinement was not atypical); <u>Young v. Beard</u>, 227 F. App'x 138 (3d Cir. 2007)(aggregate 980 days in disciplinary segregation did not violate the due process clause).

In the present case, Plaintiff was confined in the RHU for less than 30 days.  There are no allegations

in the complaint from which it can be concluded that the incidents of disciplinary confinement in the present case are materially different than those the Supreme Court found to be "not atypical" in <u>Sandin</u>, or that they differ appreciably from those of administrative custody. Consequently, Plaintiff has failed to state a due process claim against any of the defendants.

Although the complaint as filed fails to state a cause of action against any of the named defendants, it is possible that the deficiencies may be remedied by amendment.  Consequently, Plaintiff will be granted such an opportunity.  Plaintiff is also advised that the amended complaint must be complete in all respects.  It must be a new pleading which stands by itself without reference to the complaint already filed.  Such amended complaint should set forth his claims in short, concise and plain statements.  It should specify which actions are alleged as to which defendants.  If Plaintiff fails to file an amended complaint adhering to the standards set forth above, this case will be closed.

An appropriate order will be entered.


   s/Sylvia H. Rambo
United States District Judge

Dated: March 21, 2016